## Commonwealth v. Weglein, Sheriff, et al.

*Bertram K. Wolfe,* for plaintiff.

*William Linton, Bartram A. Owen* and *Frederick H. Spotts,* for defendants.

KUN, J., February 5, 1937.—In December 1931 the use plaintiff, Rose Peters, under the name Lamb, pawned with

the Fidelity Loan Company, Inc., a pawnbroker, certain jewelry. On May 19, 1933, defendant, the sheriff, by virtue of a writ of fi. fa. issued at the instance of a certain judgment creditor of the loan company, made a levy as directed by the writ. Watchmen were placed in charge of the premises by the sheriff. The ordinary business of the loan company was suspended and no merchandise was bought or sold and no pledges were permitted to be taken or redeemed. The sheriff's representatives did, however, accept interest payments due on pledges and an officer of the loan company was permitted to remain on the premises to advise customers that there was a temporary suspension of business, and that they might come back later.

This situation continued until May 29, 1933, at which time armed robbers entered and robbed the store, at Ninth and Walnut Streets, Philadelphia, in the very heart or downtown section of the city. The loan company's representative was in the store at the time and the sheriff's watchman was in the basement attending to some duties. At the point of a gun the watchman was tied up and left in the basement, and the loan company's representative was required by force to open the safes, which the robbers emptied.

Plaintiff claims to recover from the sheriff the value of her jewelry on one of two grounds: First, because in the circumstances the sheriff is liable to her absolutely as an insurer; or, secondly, in the alternative, because he is liable to her on the ground of negligence. On the facts in the case we are of the opinion that she is not entitled to recover on either ground.

The alleged right to recover on the ground that defendant is liable to her as an insurer is based on the case of Hartleib v. McLane's Administrators, 44 Pa. 510, where it was held that a sheriff is absolutely liable for the forthcoming of property levied on by him under an execution, unless deprived of it by the act of God, sudden accident, or the public enemy. This harsh rule has been departed from in every other jurisdiction, including

England, where it originated, yet we would, as a trial court, be bound to follow the case cited if the situation of the parties litigant in the instant case were similar to those in that case and certain required relevant facts were proven. It is to be noted that in the case cited plaintiff was plaintiff in the execution, the judgment creditor. Between him and the sheriff there was a certain privity, growing out of their quasi-contractual relationship, by reason of which the sheriff was required to make an accounting. The reason given in the old English case of Mildmay v. Smith et al., 2 Wms. Saund. 343, 85 Eng. Repr. 1139, was as follows:

". . . the sheriff by his return of the rescue has put the plaintiffs to the end of their suit; for they cannot sue a new execution except only for the surplus of their debt over and above the [value set in the return] . . . and the Court cannot award a *venditioni exponas,* because it appears that the goods are out of the sheriff's hands. . . . Therefore the plaintiffs ought to have a writ of debt, or *scire facias,* on the return against the sheriff, as here, or otherwise they are without remedy."

However, in a later English case which came before the Queen's Bench in 1884, Willis, Winder & Co. v. Combe, 1 Cab. & El. 353, where goods levied upon had been lost in the course of a disturbance in which the sheriff's officer took part, and in which the case just cited was relied upon to charge the sheriff with absolute responsibility, the court refused to follow the theory that the sheriff was liable absolutely as an insurer. The question posed, whether the sheriff could be held liable for damages for goods destroyed by means which he could not prevent, was answered in the negative. The court held that a sheriff cannot be held liable for the loss or destruction of goods levied upon unless negligence on his part can be established. This appears to be the generally accepted view in every other jurisdiction: 57 C. J. 844, sec. 317; 24 R. C. L. 938, sec. 31; L. R. A. 1915A, 193 (note) ; and probably would be followed in Pennsylvania today. However, it is beyond

our proper function to pass on that question. In any event, the Hartleib case is wholly inapplicable to the instant case.

In the Hartleib case and all the other old cases in which the sheriff was held liable as insurer, the suit was at the instance of the plaintiff in the execution, the judgment creditor. The very basis of the rule as explained in Mildmay v. Smith et al., supra, precludes its applicability to a claim made by a third party. There has never been a case adjudicated in which this harsh rule of absolute liability as insurer was imposed on a sheriff for the benefit of anyone other than plaintiff in the execution. Others, such as the execution debtor, have sought to impose such liability and it has been repudiated: Dorman v. Kane, 5 Allen (Mass.) 38; Kendall v. Morse, 43 N. H. 553; and Strout et al. v. Pennell, 74 Me. 260, 263, where it is stated:

"But whatever the liability of an attaching officer may be to the creditor for the loss of property attached on writ or seized upon execution, his liability to the debtor or owner, is only that of ordinary care,—such care and diligence as a prudent business man would bestow upon his own property. *Parrott v. Dearborn*, 104 Mass. 104; Whar. Neg. §289; Cooley, Torts, 394; Sher. and Red. Neg. §530, and cases in note. The plaintiffs in the case at bar stand in the condition of owner and not creditor."

Plaintiff in the instant case is not plaintiff in the execution; she is not defendant in the execution; but merely one who allegedly pawned some articles with defendant in execution. If defendant in the execution cannot hold the sheriff liable as an insurer, it is quite clear that plaintiff in this action cannot.

We consider now the question whether plaintiff established any case against defendant sheriff on the basis of alleged negligence on his part. Before a claim of this character against a sheriff could be considered on any theory, it would have to be shown that the goods which were either lost or stolen had come into his possession. In the case before us, there was, in the opinion of the court, a lack of such proof. All that the proofs showed was that

plaintiff pawned her jewelry with the pawnbroker in December 1931 and that she last saw it at the pawnbroker's in December 1932. However, the sheriff's levy was not made until May 1933, and there is no proof that anyone saw the jewelry in the interim. Of course, in an action by a pawner against a pawnee, all the former would have to do would be to prove the original pawn, which is a bailment, and then the pawnbroker would be liable for the return of the pawned goods or its value according to legal principles. This, however, is not an action by plaintiff against the pawnbroker but an action against a sheriff, a third party, whom she wishes to charge under some theory of bailment. Upon whatever legal theories any rights against the sheriff may be worked out, one thing is certain, and that is plaintiff must in the first instance establish the factual basis for the application of any such legal principles. In short, she must prove that her property came into the hands of the sheriff, and this she has failed to do. As stated, plaintiff herself said she had last seen the articles of jewelry in December 1932, some five months before the levy was made. The officer of the pawnbroking company who was in the place when it was robbed was called as a witness for plaintiff and admitted he had not seen the articles in the interim. The most the witness could say was that they "should have been there", and, in connection with some inventory supposed to be made twice a year, the date of the last one before the levy was made not being indicated, the witness admitted he did not see the jewelry in question, but merely a number of envelopes which supposedly contained the pledges. No person can be charged with responsibility as bailee of an article on evidence like that. The positive fact of possession required to be proven in a case like this cannot be supplied by any conjecture or theory of presumption. However, assuming that there were present in the case legal proof of the presence of plaintiff's jewelry when defendant sheriff made the levy, her case failed for a number of other reasons.

When a writ of fi. fa. is issued against a pawnbroker only his own goods can be levied upon. Pawned goods are not subject to levy: Goodyear v. Donnelly, 13 W. N. C. 314. What measure of duty is there on the part of the sheriff with reference to articles not attached or levied upon which come incidentally into his possession? He has some duty in relation to the goods, but it is no greater than that of a gratuitous bailee: Murfree on Sheriffs, sec. 961. Plaintiff in that situation would have to show that defendant was guilty of gross negligence. There is in this case, however, not only no proof of any such grade of negligence, but there is not present any proof of ordinary negligence. The proofs show, as stated, that the levy was made at the place of business of the pawnbroker, at Ninth and Walnut Streets, which is in the heart of the city. The sheriff put watchmen on the premises who were there day and night on eight-hour shifts. There had been an electric burglar alarm system at the place, which was discontinued on instructions from the judgment creditor, plaintiff in the execution, which the sheriff was bound to follow: Yost v. Smith, Kline & Co., 105 Pa. 628. The reason for this, no doubt, was that, inasmuch as the sheriff's watchmen were placed in charge, their fees would have to be paid by plaintiff in the execution, and it would be unnecessary to incur the other expense. Moreover, watchmen on the premises are better protection than agents of an alarm system who must come from a distance. However this may be, it was shown that the alarm system would not be in operation during the business hours of the day because the doors were open or on latch (the robbery occurred at 4 o'clock in the afternoon). The discontinuance of the burglar alarm system could not be the basis for charging the sheriff with negligence, because, even had it been on, it may not have worked. It has been decided that the mere fact that such a system did not work would not be the basis for holding the company operating the system in case of loss occasioned by a felonious entry, because such failure was not the proximate cause of the

loss: Nirdlinger v. American District Telegraph Co., 245
Pa. 453.

The proofs raised no issue for submission to the jury. Whatever rights plaintiff may have against the pawnbroker in view of the loss of the pawned jewelry by the robbery, it is quite clear to us that she failed to show that she lost her jewelry through any negligence of the defendant sheriff. The direction of the verdict for defendants was proper.

Motion for new trial overruled.

Motion for judgment n. o. v. overruled.