175 So.2d 794 (1965)
TILLMAN CHEVROLET COMPANY, Appellant,
v.
Ottis James MOORE and Bonita P. Moore, Appellees.
No. G-29.
District Court of Appeal of Florida. First District.
May 25, 1965.
Rehearing Denied June 22, 1965.
James E. Hertz, of Fisher & Hepner, Pensacola, for appellant.
Barrow & Moore, Crestview, for appellees.
STURGIS, Chief Judge.
The appellees, Mr. and Mrs. Moore, recovered a money judgment against Tillman Chevrolet Company, a corporation, William F. Smith, and Ralph Eugene Wills, defendants below, in a negligence action involving an automobile accident, and Tillman Chevrolet Company seeks reversal.
The complaint charged that defendant Smith or Wills, while operating an automobile under the permission and authority of defendant Tillman Chevrolet Company, or having possession thereof through negligence of said defendant, drove the same in such a careless, reckless and negligent manner as to cause it to collide with an automobile in which plaintiffs were riding, and that as a proximate result thereof plaintiffs suffered sundry bodily injuries; that Mr. Moore also suffered loss of wages, necessarily incurred expenses for medical treatment, hospitalization, nursing, meals, and medicines for his injuries and also for those of his wife, the co-plaintiff, and was deprived of the services and consortium of his said wife.
Appellant's answer denied that its subject automobile was driven by either defendant Smith or Wills with its permission, denied that it negligently failed to exercise due care in allowing either or both of said defendants to have possession of said automobile, denied all acts of negligence charged by the complaint, and affirmatively alleged that plaintiffs were guilty of contributory negligence in the premises.
*795 The proofs reveal that defendant Wills, having stolen a Pontiac automobile in New Orleans, Louisiana, placed an Alabama tag thereon and drove it to Panama City, Florida, where he had contact with agents of Tillman Chevrolet Company about trading the Pontiac for an Impala Chevrolet. Wills asked permission to drive the Chevrolet around the block and in accordance with normal procedure appellant's agent allowed him to do so. After being gone five to ten minutes he returned to appellant's place of business, resumed discussion with its agents about trading, said he would like to discuss the matter with his wife, asked permission to take the Chevrolet to the Dixie-Sherman Hotel, about twelve blocks distant, and show it to his wife, and appellant by its agent gave him permission to do so. After he left on this occasion appellant's agents inspected the Pontiac more closely, became suspicious and called the Highway Patrol who advised they had been looking for Wills. Appellant immediately called the Sheriff's office which sent out a pick-up order for Wills who had left Panama City in the Chevrolet and was driving between Niceville and Crestview, Florida. Defendant Smith was hitchhiking along the road and Wills stopped and picked him up. Wills told Smith he was sick and asked Smith to drive. Smith agreed and shortly thereafter collided with the automobile of the plaintiffs.
Wills, who is presently serving a term in the Federal Correctional Institution for theft of the Pontiac, testified on the trial that he had been drinking heavily during the entire escapade. Appellant's agent testified that Wills showed no signs of drinking when he came to appellant's place of business. Defendant Smith testified he could not detect any alcohol on Wills when Wills picked him up. Mr. Tillman, owner of Tillman Chevrolet Company, testified that in the usual course of business it was normal for a prospective customer to take a car off the lot and try it out, and that the customer was normally not asked to prove ownership of his own car in the initial stages of the sale.
We are called on to determine: First. Whether an automobile dealer is liable under the dangerous instrumentality doctrine when, as in this case, he enters into negotiations with a prospective customer and gives such prospect permission to drive dealer's automobile a limited distance of twelve blocks, and such person instead drives it to another county, changes the car plates thereon, and otherwise manifests an intention of appropriating the automobile to his own possession with intention to permanently deprive the dealer of it. Second. Assuming that the automobile dealer was negligent in permitting such person, who develops to be a thief, to have possession of his car, not knowing the larcenous intent, and it appears that the thief or someone with the thief's permission negligently drove the car into another, causing injury, is there a causal relation between the negligence of the dealer in allowing the thief to take possession of the car and the injuries inflicted by the thief or by the one to whom the thief entrusted possession so as to render the dealer liable under the dangerous instrumentality doctrine, or is the chain of causation broken and the doctrine rendered inapplicable by the subsequent willful, malicious or criminal larceny of the automobile by the person to whom the dealer in good faith entrusted possession on the assumption he was a prospective purchaser? These questions must be answered contrary to appellant's contentions.
Lingefelt v. Hanner, 125 So.2d 325 (Fla. App.3d, 1960), and Bryant v. Atlantic Car Rental, Inc., 127 So.2d 910 (Fla.App.2d, 1961), are clearly distinguishable from the case at bar. In Lingefelt, defendant Hanner left his car unattended with ignition unlocked in violation of an ordinance. The car was stolen and the thief negligently injured the plaintiffs. Thus the possession of defendant's car by the thief was unlawful ab initio, while in this case appellant put Wills in possession of appellant's *796 automobile. In Lingefelt the court cited 51 A.L.R.2d 633 and said:
"The majority view as expressed by these courts holds that a wilful, malicious, or criminal act as a general rule breaks the chain of causation. Lack of foreseeability appears to be the basis for this conclusion. We believe it is grounded in reason and logic, and align ourselves with this view. The act of appellee in negligently leaving the ignition switch of his automobile unlocked may have been the proximate cause of the unauthorized taking, but the appellants' injuries were due solely to the negligent operation, by an unauthorized person, of appellee's automobile."
Bryant v. Atlantic Car Rental, Inc., supra, was a case in which the defendant appellee leased an automobile to its co-defendant, Skinner, who negligently left the automobile parked and unattended on a public street in the business section of Eustis, Florida, with the keys openly displayed in the ignition lock. The automobile was stolen by a youth who negligently operated it, resulting in the death of plaintiff's husband. The Second District Court of Appeal, adhering to the decision in Lingefelt v. Hanner, supra, affirmed the action of the trial court in entering judgment for defendant on the pleadings, holding that under such circumstances there is a lack of reasonable foreseeability and that the independent intervening cause precludes liability against the owner or lessee of the vehicle. Again the facts in the case on appeal are distinguishable because the owner of the motor vehicle consented to the operation thereof by defendant Wills who in turn consented to the operation thereof by defendant Smith. Under such circumstances vicarious liability was properly visited upon the appellant owner.
Appellant cites Section 811.021, Florida Statutes, F.S.A. (the general larceny act), for the proposition that a bailee is guilty of larceny if he appropriates property in his possession with an intent permanently to deprive the owner of it. We do not accept the statutory definition of larceny as having any bearing upon the question of civil liability here involved.
The appellant having failed to demonstrate error, the judgment appealed is
Affirmed.
WIGGINTON and RAWLS, JJ., concur.